UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESSIE JOHNSON, | ) | 1:08-CV-00567 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | |

Jessie Johnson ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Avenal State Prison, pursuant to a judgement of the San Bernardino County Superior Court. (Pet. at 2). Petitioner was convicted by a jury on December 4, 1987 of second degree murder. (Answer at 1). Petitioner is currently serving a sentence of fifteen years to life. (Pet. at 2).

Petitioner does not challenge his conviction; rather, he contends that the denial of a parole release date by the California Board of Parole Hearing (the "Board") violates his constitutional rights. (Pet. at 5). The Board held a hearing on May 8, 2006, during which the Board determined that Petitioner was unsuitable for parole. (See Pet. Ex. M, Transcript of Parole Hearing).

1    Petitioner filed a petition for writ of habeas corpus with the San Bernardino County Superior
2 Court in November 2006, challenging the Board's denial of parole. (See Answer Ex. 3). The
3 Superior Court, in the only reasoned decision issued by the State courts in this case, denied
4 Petitioner's request for relief on May 14, 2007. (Answer Ex. 4).

5    Petitioner subsequently sought habeas corpus relief before the California Court of Appeal,
6 which summarily denied the petition. (Answer Exs. 5, 6). The petition for writ of habeas corpus
7 submitted to the California Supreme Court was also summarily denied by the State supreme court.
8 (Answer Exs. 7, 8).

9    On April 8, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in the
10 Central District of California. The instant action was transferred to the Eastern District of California,
11 Fresno Division, on April 24, 2008. (Court Doc. 1).

12    On September 4, 2008, Respondent filed a response to the petition.

13    On September 25, 2008, Petitioner filed a reply to the Respondent's answer.

## FACTUAL BACKGROUND

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State court's decision, upholding the Board's denial of parole, was objectively unreasonable. *See* Cal. Code Regs., tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the offense taken from the California Court of Appeal's direct review of Petitioner's conviction. (Pet. Ex. M at 6). Petitioner did not discuss the commitment offense during the parole hearing. (Id. at 5). As read into the record, the portion of the appellate court's decision stated:

> [Petitioner] worked for his father in a truck tire business. The victim, who was Virginia Brackney, made arrangements to have eight truck tires installed on her diesel truck for the sum of $1,900. [Petitioner] and his crime partner, Willy Harris, were dispatched to obtain the tires, transport and mount them on the truck at Brackney's residence. Upon the pair's arrival Mrs. Brackney went to the bank to obtain a $1,900 cash. Later that afternoon the victim's daughter arrived at the family home to discover her mother missing. Both [Petitioner] and his crime partner were at the residence and told the daughter her mother had not returned from the bank. Noting that both family vehicles [were] at the residence the daughter became concerned and began contacting family and friends in an attempt to locate her mother. After the two left the victim's ex-husband searched a truck trailer on the property and located the victim's body in a wooden box. The victim had been beaten to death with one or more hard metal objects.

> The following day Sheriff's investigators found the victim's empty purse in a dumpster of a nearby 7-eleven store. Both [Petitioner] and his crime partner were interrogated. Each of them ultimately admitted being present at the slaying, each saying the other did the actual killing. The motive according to each defendant was robbery. [Petitioner] also admitted that he assisted the co-defendant in cleaning up the crime scene but denied participation in removing or hiding the body. Tire irons, which were taken from the defendants by investigators, were examined by the pathologist and determined to be capable of causing injuries consistent with the wounds suffered by the deceased. In search of the co-defendant's residence investigator recovered bloodstained pants. Upon chemical analysis the blood was consistent [with] that of the victim.

(Id. at 6-8).

## DISCUSSION

**I.**     **Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner's custody arose from a conviction in the San Bernardino County Superior Court, Petitioner is currently incarcerated at Avenal State Prison in Kings County. Kings County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in the district court where Petitioner is currently incarcerated, the Court has jurisdiction over for the instant action. *See* 28 U.S.C. § 2241(d) (conferring concurrent jurisdiction to district court where habeas petitioner was convicted and district court where habeas petition is currently incarcerated). Additionally, Petitioner challenges the denial of his parole which occurred while he was incarcerated at Avenal State Prison; thereby making this court the proper venue for this action.

**II.**     **ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*

1  *Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The
2  instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA,
3  which became effective April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

4        While Petitioner does not challenge his conviction, Petitioner is in custody of the California
5  Department of Corrections and Rehabilitation pursuant to a state court judgment; thus, rendering 28
6  U.S.C. § 2254 the exclusive vehicle for Petitioner's habeas petition.  *Sass v. California Board of*
7  *Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002,
8  1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by
9  a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not
10  challenging his underlying state court conviction'").

11        As Petitioner filed his petition after the effective date of AEDPA, his petition for habeas
12  corpus "may be granted only if he demonstrates that the state court decision denying relief was
13  'contrary to, or involved an unreasonable application of, clearly established Federal law, as
14  determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.
15  2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.  Initially, this Court must
16  "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court
17  of the United States.'"  *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining
18  what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the
19  dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id*.
20  (quoting *Williams*, 592 U.S. at 412).  "In other words, 'clearly established Federal law' under §
21  2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time
22  the state court renders its decision."  *Id*.

23        Finally, this Court must consider whether the state court's decision was "contrary to, or
24  involved an unreasonable application of, clearly established Federal law."  *Lockyer*, 538 U.S. at 72,
25  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant
26  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
27  question of law or if the state court decides a case differently than [the] Court has on a set of
28  materially indistinguishable facts."  *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

"Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions as a state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and a federal habeas court is bound by a state's interpretation of its own laws, *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).

\\\

\\\

1    Here, three State courts–the San Bernardino County Superior Court, the California Court of
2 Appeal, and the California Supreme Court–adjudicated Petitioner's claims.  (*See* Answer Exs. 4, 6,
3 8).  As the California Supreme Court and the California Court of Appeal, respectively, issued
4 summary denials of Petitioner's claims, the Court looks through those decisions to the last reasoned
5 decision; namely, that of the San Bernardino County Superior Court.  *See Ylst v. Nunnemaker*, 501
6 U.S. at 804.

**III.    Review of Petitioner's Claim**

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned
decision by the State court was an unreasonable application of clearly established federal law.  *See
Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court
case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. §
2254).  Petitioner contends that the Board's denial deprived him of his constitutional right to due
process of the law as the decision was not supported by some evidence.

*A.    Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty
or property interest which has been interfered with by the State; the second examines whether the
procedures attendant upon that deprivation were constitutionally sufficient.'"  *Sass*, 461 F.3d at 1127.
The United States Constitution does not, by itself, create a protected liberty interest in a parole date.
*Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty
interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary.
(Answer at 3-4).  The Ninth Circuit has held that a prisoner possess a liberty interest in parole where
mandatory language in a State's statutory scheme for parole creates a presumption "that parole
release will be granted' when or unless certain designated findings are made, and thereby give rise to
a constitutional liberty interest.'"  *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting
*Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole
scheme gives rise to a cognizable liberty interest in release on parole).  California Penal Code section
3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence

provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003).  Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

        A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 4-6).  Consequently, Respondent argues that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials.  (Id. at 6).  Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding.  *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, at the minimum, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399.  Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

        The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129.  "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted).  The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good

time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole. The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

\\\

\\\

\\\

### B.   State Court Decision

After reviewing the record, the Court does not find that Petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1). The Superior Court found that there was a modicum of evidence supporting the Board's finding that Petitioner posed an unreasonable risk of danger if released based exclusively on the commitment offense. (Answer Ex. 4 at 3-4). While the Court is wary of using only the commitment offense to satisfy the some evidence standard, the Court's *de novo* review of the constitutional issue reveals that Petitioner's Due Process rights were not violated. *See Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (citing *Lockyer*, 538 U.S. at 71).[1]

Here, the Board's finding, that Petitioner posed a current risk of danger to society if released from prison, rested mainly on the commitment offense and Petitioner's prison disciplinary record. The Board found that the crime was carried out in a cruel manner, demonstrating callous disregard for human suffering, and was carried out against an extremely vulnerable victim. While the California Supreme Court recently held reliance on the commitment offense may violate a petitioner's due process rights, the Court does not find that Petitioner's due process rights were violated here as the Board did not rely solely on the immutable characteristics of the commitment offense. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).

The *Lawrence* court observed that a discipline-free record while incarcerated does not automatically render the commitment offense unpredictive of current dangerousness. *Id*. (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008)). The Board here was concerned not only with the particularly egregious nature of the commitment offense but also with Petitioner's inability to take responsibility for the commitment offense and other incidents, (Pet. Ex. M at 70-71), as Petitioner also failed to admit responsibility for the disciplinary infractions he incurred while in prison, (Id. at 21, 41-43). The Board expressed concern that these repeated failures to admit responsibility evidenced minimization of and a lack of insight into both the commitment offense and the disciplinary violations. (Id. at 70-71). As noted by the California

---

[1] In *Frantz*, the Ninth Circuit found that AEDPA does not require a federal habeas court to adopt any one methodology in deciding the ultimate questions–namely, whether a state court decision is contrary to or an unreasonable application of clearly established federal law. *Frantz*, 533 F.3d at 737. Therefore, federal habeas courts may first review the constitutional question, especially where doing so would provide insight into the ultimate inquiry.

Supreme Court in *Shaputis*, a lack of insight into the crime can constitute evidence of current dangerousness. *In re Shaputis*, 44 Cal.4th at 1259-1260 (concluding that lack of insight into the commitment offense rendered aggravating factor of the crime probative of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary nor capricious despite an inmate's discipline-free record during incarceration).

Furthermore, unlike in *Lawrence*, Petitioner's record in prison has not diminished the probative value of his commitment offense. In *Lawrence*, the California Supreme Court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226. Here, Petitioner's record while incarcerated provides ample evidence of his current dangerousness, as Petitioner received three serious disciplinary reports for a physical altercation in 1989, manufacturing a weapon in 1994, and making false allegations against peace officers in 2000. (Pet. Ex. L at 5; Pet. Ex. M at 31-32). Petitioner's disciplinary history illustrates the relatively recent nature of Petitioner's gains as his last serious disciplinary infraction came only six years prior to the parole hearing. More importantly, Petitioner's inability to refrain from committing serious disciplinary violations demonstrates that Petitioner may have difficulty refraining from criminal conduct if released from; therefore, Petitioner's prison disciplinary record exhibits a rational nexus to Petitioner's current dangerousness.

Lastly, the Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Considering Petitioner's disciplinary record and the commitment offense, the Court cannot say that the State's conclusion, upholding the denial of parole, was objectively unreasonable.

\\\

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 28, 2009**           /s/ John M. Dixon
                                        UNITED STATES MAGISTRATE JUDGE